Robert LUDOWESE, Appellant,

v.

Darrel REDMANN, et al., Farmers and Merchants Bank of Springfield, f/k/a The State Bank of Morgan; et al., John Burgstahler, Respondents.

No. C0–91–1273.

Court of Appeals of Minnesota.

Dec. 17, 1991.

Review Denied Feb. 10, 1992.

William D. Turkula, Anne L. Johnson, Messerli & Kramer, Minneapolis, for Robert Ludowese.

C. Stephen Rowley, Courtland, for Darrel Redmann, et al.

John D. Moritz, O'Leary & Moritz, Ltd., Springfield, for Farmers and Merchants Bank of Springfield.

Robert M. Halvorson, Gislason, Dosland, Hunter & Malecki, New Ulm, for John Burgstahler.

Considered and decided by HUSPENI, P.J., and AMUNDSON and FLEMING,[1] JJ.

## OPINION

AMUNDSON, Judge.

Appellant challenges the trial court's grant of respondents' motion for judgment on the pleadings. He argues the trial court erred by not construing Minn.Stat. § 500.24 to prohibit a March 1988 sale of agricultural property from respondents Darrel and Jane Redmann to respondent John Burgstahler. Appellant also argues the trial court improperly dismissed his tortious interference with contract claim. We disagree and affirm.

## FACTS

The facts are not in dispute. In January 1988 appellant Robert Ludowese executed a purchase agreement with respondent State Bank of Morgan (Morgan) for 160 acres of agricultural property in McLeod County. The purchase price was $104,-600.00, and, as consideration for the contract, Ludowese gave Morgan $2,500 in earnest money. Notice of Morgan's intention to sell the land was given to Darrel and Jane Redmann, the former owners of the land,[2] pursuant to Minn.Stat. § 500.24, subd. 7 (Supp.1987). This statute provides that a federal agency, limited partnership or corporation may not sell agricultural land before offering the land for sale to the immediately preceding former owner. *Id.* After the Redmanns received notice of the sale, they advertised the land for sale in the local newspaper and soon found a purchaser, John Burgstahler. In March 1988

Ludowese was informed of the Redmann's exercise of their statutory right of first refusal to purchase the land under section 500.24.

On March 31, 1988 the Redmanns and John Burgstahler executed a purchase agreement for the land. The agreement provided that $104,600 of the $128,000 purchase price would be paid to the Federal Deposit Insurance Corporation (FDIC), the receiver for Morgan. The Redmanns then conveyed by warranty deed their interest in the land to Burgstahler.

In October 1990 Ludowese commenced this action against respondents, arguing Morgan breached the January 1988 purchase agreement, and the Redmanns and Burgstahler violated Minn.Stat. § 500.24 and intentionally interfered with the Morgan/Ludowese contract. Respondents moved for judgment on the pleadings. Minn.R.Civ.P. 12.03. The trial court granted respondents' motion, and this appeal followed.

## ISSUES

1. Did the trial court err by granting respondents' motion for judgment on the pleadings?

A. Did Minn.Stat. § 500.24, subd. 6(k) (Supp.1987) prohibit the immediately preceding former owner from selling property acquired by exercising the right of first refusal to a third party?

B. Did Minn.Stat. § 500.24, subd. 6(g) (Supp.1987) provide a grounds to dismiss appellant's complaint?

2. Did the trial court err by dismissing appellant's claim for tortious interference of contract?

## ANALYSIS

The trial court dismissed Ludowese's complaint, concluding it failed to state a claim upon which relief could be granted. The only question on review is whether

---

1. Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

2. The Redmanns had been foreclosed upon by Morgan. In turn, Morgan became insolvent, and the Federal Deposit Insurance Corporation was operating Morgan at the time of the closing of the land transaction at issue.

Ludowese's complaint sets forth a legally sufficient claim for relief. *Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980). It is immaterial to our consideration whether Ludowese can prove the facts alleged. *Id.*

## I.

### A.

The trial court concluded the Redmanns properly exercised their right of first refusal in March 1988 and that Minnesota law did not prohibit the Redmanns' subsequent sale of the agricultural property to Burgstahler. We agree with the trial court's conclusion.

■ At the time of the sale, Minn.Stat. § 500.24, subd. 6 (Supp.1987) required three steps. First, the statute required Morgan to make a good faith offer to sell the land to the Redmanns, as the immediately preceding former owners, at a price no higher than the Ludowese offer. *See* Minn.Stat. § 500.24, subd. 6(a). Morgan did this. Second, pursuant to the statute the Redmanns needed to exercise their right of first refusal within 65 days of the Morgan offer. *See id.* subd. 6(g). The Redmanns did this. Third, within ten days after exercising their right of first refusal by accepting Morgan's offer, the Redmanns needed to pay the purchase price. *See id.* This occurred. Accordingly, the Redmanns properly exercised their right of first refusal.

Ludowese advances three arguments urging us to reverse the trial court's dismissal. First, he contends the Redmanns subsequent sale to Burgstahler violated a provision of section 500.24. The statute provides:

The right of an immediately preceding former owner to receive an offer to lease or purchase agricultural land under this subdivision may not be assigned or transfered but may be inherited.

Minn.Stat. § 500.24, subd. 6(k) (Supp.1987). Ludowese argues that by first finding a buyer and then accepting Morgan's offer, the Redmanns transferred their right to receive Morgan's offer in violation of the statute.

We disagree. The trial court reasoned there was a distinction between the Redmanns' statutory right to receive Morgan's offer to purchase the property and their actual transfer of the property to Burgstahler. In other words, the statute prohibited transfer of the Redmann's right to receive Morgan's offer to purchase; it did not, however, prohibit the transfer of land after the Redmann's exercised the right of first refusal. We believe this distinction is sound, and it guides our decision.

As discussed above, the Redmanns and Morgan properly followed the statutory requirements which accorded the Redmanns the right to receive Morgan's offer. If, in contrast, during negotiations with Burgstahler the Redmanns had transferred their right to receive Morgan's offer, then the statute was violated. No allegations were made that this occurred. Instead, the record shows that only after exercising the right did the Redmanns actually transfer the property. The actual transfer of the property, however, was not prohibited. In short, at the time of this transaction, the statute did not prohibit the Redmanns from first finding a potential buyer, and then, after accepting Morgan's offer and closing, reselling and transferring the land to Burgstahler. Lodowese's first argument is therefore unpersuasive.

Second, Ludowese contends allowing enforcement of the Redmanns–Burgstahler contract thwarts the legislature's purpose in enacting section 500.24.

The legislature finds that it is in the interests of the state to encourage and protect the family farm as a basic economic unit, to insure it as the most socially desirable mode of agricultural production, and to enhance and promote the stability and wellbeing of rural society in Minnesota and the nuclear family.

Minn.Stat. § 500.24, subd. 1 (Supp.1987). This court has reiterated the legislature's purpose:

The legislature, by requiring the foreclosing agency or corporation to offer to sell the land back to the former owner, at

the price offered by a third party, clearly expressed its preference that foreclosed property remain in the possession of its former owner whenever possible. *Harbal v. Federal Land Bank of St. Paul,* 449 N.W.2d 442, 447 (Minn.App.1989), *pet. for rev. denied* (Minn. Feb. 21, 1990).

Ludowese asserts the Redmanns had no intention of farming the land after exercising their right to purchase it. Instead they acted as "strawmen;" they advertised the land, found a purchaser, exercised their right of first refusal and quickly resold the land. Hence the legislative purpose was frustrated and the contract should be prohibited. We recognize Ludowese's point: The Redmanns' sale to Burgstahler did not keep the foreclosed property in the possession of the former owner. We disagree with Ludoweses's proposed result however. Were we to embrace Ludowese's position, the legislature's purpose—to protect the family farm—is plainly not furthered either because Ludowese would possess the property. Equally important, we are mindful that at the time of the Redmann–Burgstahler contract, the legislature had not yet expressly prohibited resale of property acquired by exercising the right of first refusal. Under these circumstances, we hold that Minn.Stat. § 500.24, as it existed at the time of the Redmanns' contract, did not prohibit the Redmanns' subsequent sale of the property to Burgstahler after they had exercised their right of first refusal under the statute.

■ Finally, Ludowese's contention that the 1988 legislative amendment controls the Redmanns–Burgstahler sale is untenable. In 1988 the legislature prohibited immediately preceding former owners, like the Redmanns, from reselling land acquired by exercising the statutory right of first refusal if the transaction was negotiated before the preceding owner exercised the right of first refusal. 1988 Minn.Laws ch. 700, sec. 1, as codified in Minn.Stat. § 500.24, subd. 6(n) (1988). The Redmanns acknowledged they negotiated to resell the land before accepting Morgan's offer; hence if the 1988 amendment controls, their sale to Burgstahler is prohibited.

The amendment, however, does not control the Redmanns' transaction. First, the legislature expressly stated the amendment does not apply to a "sale relating to an offer made to an immediately preceding former owner before final enactment." 1988 Minn.Laws ch. 700, sec. 13(2). Final enactment of the amendment was April 28, 1988, three months after Morgan's offer to the Redmanns. Consequently the amendment is not applied retroactively. *See* Minn.Stat. § 645.21 (1990) (statute is applied retroactively only when the legislature clearly indicates that intent). Second, the amendment was not intended to merely clarify the existing statute. *See Carlson v. Lilyerd,* 449 N.W.2d 185, 190 (Minn.App. 1989) (amendment may be read retroactively where it clarifies the statute) *pet. for rev. denied* (Minn. Mar. 8, 1990). Here the legislature gave no indication the amendment was meant to clarify the statute. Moreover, because the legislature expressly restricted the amendment's application to after final enactment, it is impossible to construe the amendment as a clarification.

### B.

The trial court also concluded *sua sponte* that Minn.Stat. § 500.24, subd. 6(g) requires a ruling in respondent's favor. The subdivision provides:

> A seller may sell * * * the agricultural land or farm homestead subject to this subdivision to the third party * * * if:
>
> (1) the immediately preceding former owner does not accept an offer to * * * buy before the *offer* terminates.

Minn.Stat. § 500.24, subd. 6(g) (emphasis added). The trial court reasoned this provision allows the Redmanns to accept offers from outside buyers, such as Burgstahler, before the termination of the third-party (Morgan to Ludowese) offer. Respondents concede this is a misinterpretation of the statute. Instead the statute refers to the offer by Morgan to the Redmanns; thus, Morgan can sell the land to a third party, i.e., Ludowese, if the Redmanns, as former owners, do not accept Morgan's offer before it terminates. Thus, subdivision 6(g) is inapplicable to this case.

## II.

Ludowese argues the trial court erroneously dismissed his intentional interference with contract claim without according him the opportunity to litigate the issue. We disagree. There are five elements of an intentional interference with contract claim: (1) existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) an intentional procurement of its breach (4) without justification; and (5) damages. *Royal Realty Co. v. Levin,* 244 Minn. 288, 292, 69 N.W.2d 667, 671 (1955). We conclude Burgstahler's interference with the Morgan–Ludowese contract was justified as a matter of Law. In this case it was the lawful operation of the Redmanns' statutory right of first refusal which prevented the contract's performance. Since there were no other allegations of tortious interference with the contract, Ludowese's claim was properly dismissed by the trial court.

## DECISION

The trial court properly dismissed Ludowese's complaint on the ground that Minn.Stat. § 500.24 (Supp.1987) does not prohibit the Redmanns from selling their property to Burgstahler after properly exercising their right of first refusal. While the trial court erred in concluding Minn. Stat. § 500.24, subd. 6(g) justified dismissal of Ludowese's claim, it was an alternative ruling and therefore not dispositive of this case. The trial court did not err in dismissing Ludowese's tortious interference with contract claim.

Affirmed.