STATE OF MINNESOTA

IN SUPREME COURT

A13-0898

Court of Appeals                                                            Page, J.
                                                        Took no part, Lillehaug, J.

Sysdyne Corporation,

                    Appellant,

vs.                                                            Filed:  March 4, 2015
                                                        Office of Appellate Courts

Brian Rousslang, et al.,

                    Respondents.

_____

Jessica L. Roe, Mark R. Bradford, Bassford Remele, P.A., Minneapolis, Minnesota, for appellant.

Joseph M. Sokolowski, Todd Wind, Pamela Abbate-Dattilo, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for respondents.

William L. Davidson, Peter D. Stiteler, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota, for amicus curiae TechServe Alliance.

_____

S Y L L A B U S

1.      The justification defense against a claim of tortious interference with contract may be satisfied by a defendant's good-faith reliance on advice of outside counsel, provided that the legal advice is obtained through a reasonable inquiry.

2.      The trial court and court of appeals did not err in concluding that respondent Xigent met its burden of proving that its interference with the contract was

1

justified based on reliance on the advice of counsel, given the evidence supporting the trial court's findings that respondent engaged in a reasonable inquiry with outside counsel and honestly relied on counsel's advice that the contract was unenforceable.

Affirmed.

O P I N I O N

PAGE, Justice.

Appellant Sysdyne Corporation sued respondent Xigent Solutions, LLC, for tortious interference with contract resulting from Xigent's hiring of respondent Brian Rousslang—a former employee of Sysdyne who was subject to a noncompete agreement—and sued Rousslang for breach of contract. Rousslang did not dispute that he breached the noncompete agreement, and the trial court awarded damages to Sysdyne on its breach of contract claim with respect to certain customers Rousslang brought with him from Sysdyne to Xigent. The trial court ruled in favor of Xigent, however, on the tortious interference claim, concluding that Xigent's interference was justified because Xigent conducted a reasonable inquiry into the enforceability of the noncompete agreement and honestly believed, based on advice of outside counsel, that the agreement was unenforceable. The court of appeals affirmed, citing our decision in *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998), for the proposition that "a party who relies on the advice of outside counsel may be justified in interfering with a contractual relationship." *Sysdyne Corp. v. Rousslang*, No. A13-0898, 2014 WL 902713, at *4 (Minn. App. Mar. 10, 2014). In its appeal to our court, Sysdyne raises the following issues: whether the justification defense to a claim of tortious interference with

2

contract may be satisfied by reliance on incorrect advice of counsel; and, if so, whether the trial court's finding of honest reliance on the advice of counsel after a reasonable inquiry is supported by the record. We affirm.

Sysdyne and Xigent provide staff augmentation services to companies in the engineering and information technology industries. Sysdyne hired Brian Rousslang in 2006. Rousslang signed an employment agreement containing a noncompete provision. For a period of 12 months following the termination of his employment with Sysdyne, Rousslang agreed that he would not "accept employment, consult with, or otherwise become associated or affiliated with . . . any business competitor" of Sysdyne that provides similar services in seven specific Twin Cities metro area counties. Additionally, Rousslang agreed that he would not, during the same 12-month period, "in any manner contact, solicit or cause to be solicited, customers or former or prospective customers" of Sysdyne within the same seven-county area. As a condition of his promotion to account manager in 2007, Rousslang agreed that he would continue to abide by the terms of the original employment agreement, including the noncompete provision.

In early 2010 Rousslang began exploring the possibility of a position with Xigent. Rousslang provided Xigent with a copy of his 2006 offer letter and employment agreement with Sysdyne. Xigent's president and co-owner, Bob Bernu, sent the letter and employment agreement to outside counsel, Joseph Sokolowski, for review. According to Bernu, Sokolowski advised him that the noncompete agreement was overbroad as to Rousslang's preexisting customers and that the entire agreement was unenforceable. Based on this advice, Xigent advised Rousslang that the noncompete

3

agreement was unenforceable and offered him a position at Xigent, which Rousslang accepted on the condition that Xigent cover any legal fees associated with his move to Xigent.

Sysdyne sued Rousslang for breach of contract and Xigent for tortious interference with contract and tortious interference with a prospective business relationship. Before trial, the trial court granted partial summary judgment in favor of Xigent and Rousslang as to clients with whom Rousslang had a relationship before he began working for Sysdyne. The trial court denied Xigent and Rousslang's summary judgment motion to declare the entire noncompete agreement unenforceable, concluding that the noncompete agreement was enforceable except as to Rousslang's preexisting clients.

According to the trial court, Rousslang and Xigent did not dispute that Rousslang breached the noncompete agreement as to three Sysdyne clients with whom Rousslang did not have a preexisting relationship. Therefore, the dispute at trial centered on: (1) the scope of the noncompete agreement; (2) the amount of damages, if any, caused by the breach of the noncompete agreement; and (3) whether Xigent tortiously interfered with the noncompete agreement. With respect to Sysdyne's tortious interference claim, Xigent argued that any interference with the noncompete agreement was justified based on advice from outside counsel. In support of this claim, Xigent presented an e-mail exchange between Bernu and Sokolowski regarding Sokolowski's review of Rousslang's original offer letter and employment agreement. Xigent also introduced billing records indicating that Sokolowski billed 0.4 hours for review of the letter and agreement and 0.3 hours for a telephone conference with Bernu regarding "noncompete issues." Bernu

4

testified that he told Sokolowski that Rousslang would be doing similar work at Xigent as he had been doing at Sysdyne, with some added responsibilities, but did not describe Sysdyne's business. Bernu also testified that he viewed Sokolowski as an expert on noncompete agreements, that Sokolowski had reviewed noncompete agreements for Xigent for 10 to 12 years, and that Bernu relied on Sokolowski's advice. The trial court did not permit Sysdyne to call Sokolowski, who was also Xigent's trial counsel, as a witness. The court reasoned that Sysdyne waived its right to do so when Sysdyne withdrew its request to depose Sokolowski, but then decided to call Sokolowski as a witness on the "verge of trial."

The trial court entered judgment against Rousslang in the amount of $158,240 plus costs and interest on the breach of contract claim. The court also concluded that Xigent was justified in interfering with the contract because Xigent "conducted a reasonable inquiry into the enforceability of the [n]oncompete [a]greement" and, based on advice of counsel, "honestly believed that the [agreement] was unenforceable."

On appeal to the court of appeals, Sysdyne argued that the trial court erred in concluding that Xigent's actions were justified, and in refusing to allow Sysdyne to call Sokolowski as a witness at trial.[1] The court of appeals affirmed, concluding that the record supported the trial court's findings that Xigent made a reasonable inquiry and

---

[1] At the court of appeals, Sysdyne also challenged the trial court's "blue-penciling" of the employment agreement to exclude Rousslang's preexisting customers from the noncompete clause and the trial court's refusal to award Sysdyne attorney fees. *Sysdyne*, 2014 WL 902713, at *3, 6. The court of appeals affirmed. *Id.* at *4, 7. Sysdyne did not raise any challenges related to the breach of contract claim against Rousslang in its petition for review to this court.

5

honestly believed that Rousslang's noncompete agreement was unenforceable. *Sysdyne*, 2014 WL 902713, at *5.

I.

In this appeal, we are presented with two issues related to Sysdyne's tortious interference with contract claim against Xigent: (1) whether the justification defense to a claim of tortious interference with contract may be satisfied by reliance on incorrect advice of counsel; and, (2) if so, whether the trial court's finding of good-faith reliance on the advice of counsel is supported by the record. A cause of action for tortious interference with contract has five elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Furlev Sales & Assocs., Inc., v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982). The sole element at issue in this case is the fourth element, "without justification." Whether the interference is justified is normally a question of fact. *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994). "[T]he test is what is reasonable conduct under the circumstances." *Id.* The burden of proving that interference with a contract was justified is on the defendant. *Royal Realty Co. v. Levin*, 244 Minn. 288, 295, 69 N.W.2d 667, 673 (1955).

Sysdyne contends that interference with a contract can only be justified when the defendant acts to further a legally protected interest of its own. Sysdyne further contends that the justification defense cannot be satisfied by a defendant's honest but erroneous belief, based on the advice of counsel, that a contract is unenforceable. Xigent argues that our decision in *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998),

6

impliedly recognized that it is possible to establish justification based on advice of outside counsel if the defendant engaged in a "reasonable inquiry" with counsel. Whether the justification defense may be satisfied by reliance on the advice of counsel is a question of law, subject to de novo review.[2] *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 214 (Minn. 2014).

## II.

We turn first to Sysdyne's argument that the justification defense cannot be satisfied by the defendant's reliance on the advice of outside counsel. More specifically, Sysdyne contends that justification is limited to situations in which the defendants have asserted, in good faith, a legally protected interest of their own, citing to *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994), and the Restatement (Second) of Torts § 773 (1979). Sysdyne's argument fails. We held in *Kjesbo* that "[t]here is no wrongful interference with a contract where one asserts 'in good faith a legally protected interest of his own . . . believ[ing] that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.' " 517 N.W.2d at 588 (quoting Restatement (Second) of Torts § 773). But we have not indicated that interference with a contract is justified *only* when a defendant asserts in good faith a legally protected interest that would be impaired

---

[2] Xigent argues that Sysdyne forfeited review of the issue of whether the justification defense can be satisfied by the defendant's reliance on the advice of counsel because Sysdyne did not challenge the legal validity of Xigent's advice-of-counsel defense at the trial court or court of appeals. Ordinarily, we do not decide issues raised for the first time on appeal. *See, e.g., Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 909 (Minn. 1999). After a careful review of the record, we are satisfied that Sysdyne adequately preserved the issue below and therefore reject Xigent's forfeiture argument.

or destroyed by performance of the contract. *See* 517 N.W.2d at 588. The lack of limiting language is significant because, in *Kjesbo*, our statement that "[t]here is no wrongful interference with a contract where one asserts 'in good faith a legally protected interest of his own' " is preceded by a broader characterization of justification: "whether interference is justified is an issue of fact, and the test is what is reasonable conduct under the circumstances." *Id.*

Further, we have never rejected the possibility that *reasonable* reliance on the advice of counsel could establish justification in the context of tortious interference with contract claims. To the contrary, we have characterized justification as evading precise definition and have repeatedly indicated that justification is normally a question of fact. *See Royal Realty*, 244 Minn. at 295, 69 N.W.2d at 672. As noted above, the appropriate test for justification is "what is *reasonable* conduct under the circumstances." *Kjesbo*, 517 N.W.2d at 588 (emphasis added) (citing *Bennett v. Storz Broad. Corp.*, 270 Minn. 525, 537, 134 N.W.2d 892, 900 (1965)). A per se rule precluding reliance on the advice of counsel from justifying a party's interference with a contract would be inconsistent with our fact-based, case-by-case approach.

Not only have we failed to reject reliance on the advice of counsel as a justification for interference with a contract, but in *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998), we impliedly recognized that a defendant's interference with a contract may be justified by reliance on the advice of counsel. *Kallok* involved a tortious interference claim by Medtronic against a rival medical device company, Angeion, based on Angeion's offer of employment to a Medtronic employee who was subject to a series

of noncompete agreements. *Id*. at 358-59. Angeion argued that its interference was justified because it consulted with outside counsel to determine whether the employee would violate his noncompete agreements by accepting employment with Angeion. *Id*. at 362. We rejected Angeion's argument because Angeion "did not utilize a reasonable inquiry in ascertaining whether Kallok's noncompete agreements with Medtronic prevented him from being employed by Angeion." *Id.* Specifically, Angeion did not "candidly provide[] its attorneys with all relevant information" pertaining to Kallok's position and responsibilities at Medtronic, including his access to confidential information. *Id.* We held that Angeion "may not rely upon an infirm consultation with counsel and the resulting advice as a justification for its action." *Id.*

The implication of our decision in *Kallok* is that the trier of fact could have properly determined that the defendant's interference was justified if the inquiry had been reasonable. Given the fact-based nature of the justification-defense inquiry and our reasoning in *Kallok*, we conclude that the lower courts did not err when they determined that the justification defense may be satisfied by a defendant's reliance on advice of outside counsel when that reliance is reasonable.[3]

---

[3]   Sysdyne and amicus curiae TechServe Alliance express concerns that recognizing this defense will effectively extinguish tortious interference with contract claims and will unfairly transfer the consequences of erroneous legal advice onto the innocent party. Such concerns are mitigated by the fact that *Kallok* does not imply that reliance on advice of counsel per se justifies tortious interference with contract; the consultation with counsel cannot be "infirm," as it was in *Kallok*. 573 N.W.2d at 362. Moreover, an employer can still recover in contract for an employee's breach of a noncompete agreement. For example, in this case Sysdyne was awarded $158,240 in its breach of

(Footnote continued on next page.)

9

III.

We next turn to Sysdyne's contention that, even if an erroneous belief based on advice of counsel can justify intentional interference with contract, "the belief must be informed by something more than an infirm, conclusory legal opinion." Specifically, Sysdyne argues that the trial court erred in concluding that Xigent's interference was justified because (1) Xigent provided "virtually no factual information to Sokolowski that would have allowed him to give a reasoned opinion" and (2) nothing in the record confirms the content of and basis for Sokolowski's legal advice.

In *Kallok*, we suggested that whether a defendant was justified in interfering with a contract based on the advice of outside counsel hinges on the reasonableness of the defendant's inquiry. *See* 573 N.W.2d at 362. The trial court found that "Xigent conducted a reasonable inquiry into the enforceability of the [n]oncompete [a]greement," and the court of appeals concluded that this finding was supported by the record— providing justification for Xigent's interference with the contract. *Sysdyne Corp. v. Rousslang*, No. A13-0898, 2014 WL 902713, at *5 (Minn. App. Mar. 10, 2014). The first of Sysdyne's arguments, that Xigent did not disclose necessary facts to Sokolowski, directly challenges the trial court's finding that Sysdyne engaged in a "reasonable inquiry." We review a trial court's findings of fact for clear error, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *See* Minn. R.

(Footnote continued from first page.)
contract claim against Rousslang. Xigent is ultimately responsible for this amount because it agreed to cover any legal fees associated with Rousslang's move to Xigent.

10

Civ. P. 52.01 (2014); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 441 (Minn. 1983).

As the court of appeals recognized, there is support in the record for the trial court's finding of a reasonable inquiry. *Sysdyne*, 2014 WL 902713, at *5. Xigent provided Sokolowski with Rousslang's employment agreement, including the noncompete provision, and the original offer letter from Sysdyne. Although Xigent did not inform Sokolowski about the nature of Sysdyne's business, Xigent did inform Sokolowski that Rousslang would be doing essentially the same work for Xigent as he was doing for Sysdyne. Xigent also produced billing records confirming that Sokolowski reviewed and discussed the noncompete agreement with Xigent's president and co-owner, Bob Bernu. Bernu testified that he viewed Sokolowski as an expert in noncompete agreements and that Sokolowski had regularly reviewed noncompete agreements for Xigent over a 10- to 12-year period. These facts, collectively, support the trial court's finding that Xigent engaged in a "reasonable inquiry"—particularly when due regard is given to the trial court's opportunity to evaluate the credibility of Bernu's testimony. *See* Minn. R. Civ. P. 52.01.

This situation is distinguishable from that in *Kallok*, in which the defendant not only failed to provide relevant information to counsel regarding the employee's position and access to confidential information, but actually provided incorrect information. 573 N.W.2d at 360, 362. Additionally, in *Kallok*, outside counsel was not provided with copies of the relevant noncompete agreements. *See id.*

11

Sysdyne also argues that a defendant should not be permitted to avail itself of an advice-of-counsel defense when the record contains nothing to verify the content of and legal basis for counsel's advice. This contention is without merit. First, a defendant is not required to establish the legal analysis underlying an attorney's advice in order to prove justification. *Kallok* suggested that the appropriate focus of the justification inquiry is the reasonableness of the defendant's consultation with counsel and reliance on the resulting advice, not the attorney's legal analysis. *See* 573 N.W.2d at 362 (determining that Angeion's interference was not justified because "Angeion did not utilize a reasonable inquiry in ascertaining" whether Kallok's noncompete agreements prevented him from working at Angeion). In other contexts, an advice-of-counsel defense similarly requires the defendant to establish that he or she fully disclosed all material facts to the attorney, received advice that his or her conduct was legal, and acted in good-faith reliance on that advice. *See, e.g., Miller v. Am. Nat'l Bank in Little Falls*, 216 Minn. 19, 23, 11 N.W.2d 655, 657 (1943) (defense to malicious prosecution claim).

Moreover, the fact that legal advice was verbal and undocumented may be relevant to the reasonableness of the defendant's reliance on the advice, but does not necessarily preclude the possibility that the facts of a particular case may establish justification.[4] Such is the case here. At trial, Bernu testified regarding the substance of Sokolowski's advice and the court had the opportunity to evaluate the credibility of

---

[4] A per se rule regarding the evidence necessary to establish justification would be inconsistent with the case-by-case, fact-based nature of the justification inquiry, *see Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994).

Bernu's testimony. While Bernu did not provide a detailed explanation of Sokolowski's advice, Bernu testified that Sokolowski at least briefly explained why he believed the noncompete agreement was overbroad (because it encompassed Rousslang's preexisting customers). Bernu also testified that Xigent frequently relied on Sokolowski for advice regarding noncompete agreements. Moreover, the billing records and e-mail exchange Xigent provided confirm that Sokolowski reviewed Rousslang's employment agreement and discussed the matter with Bernu. This evidence, combined with the trial court's opportunity to assess the credibility of Bernu's testimony, support the court's finding that Xigent honestly relied on the advice of counsel regarding the enforceability of the noncompete agreement after engaging in a reasonable inquiry. Thus, the trial court did not err in concluding that Xigent's interference was justified.

In sum, we conclude that, under *Kallok v. Medtronic, Inc*., 573 N.W.2d 356 (Minn. 1998), the justification defense to tortious interference with contract may encompass reasonable reliance on advice of counsel. Under the facts of this case, we hold that the trial court did not err in concluding that Xigent met its burden of proving the justification defense given the evidence supporting Xigent's reasonable inquiry with outside counsel and honest reliance on counsel's advice that the contract was not enforceable.

Affirmed.


LILLEHAUG, J., took no part in the consideration or decision of this case.

13